UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TUAN VAN HUA,

      Petitioner,

    v.                              CAUSE NO. 3:26cv548 DRL-SJF

BRIAN ENGLISH,

      Respondent.

OPINION AND ORDER

Immigration detainee Tuan Van Hua filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondent answered the petition. Though Mr. Hua did not file a reply, the time to do so expired. The petition is ready to be decided.

Mr. Hua was born in Vietnam and entered the United States as a refugee in 1983. On February 8, 2008, he was convicted in New Jersey of aggravated sexual assault and endangering the welfare of a child and sentenced to ten years. On September 18, 2015, United States Immigration and Customs Enforcement (ICE) detained him. On December 14, 2015, an immigration judge ordered him removed. On March 8, 2016, ICE concluded removal to Vietnam was unlikely due to the terms of the repatriation agreement between the United States and Vietnam and Mr. Hua's entry into the United States prior to 1995. On April 5, 2016, Mr. Hua transferred from immigration custody to pretrial criminal custody. On September 30, 2025, ICE detained him again. On October 14, 2025, an

immigration judge ordered him removed to Vietnam. He is currently held at the Miami Correctional Facility.

According to the petition, Vietnam has consistently refused to issue travel documents to individuals who entered the United States before July 12, 1995. Mr. Hua references a 2008 treaty between the United States and Vietnam, which does not require Vietnam to accept such individuals, and contends that it is not apparent that he qualifies for removal under the Memorandum of Understanding from November 2020. On June 22, 2026, the respondent represented that "[u]pon the receipt of travel documents, ICE intends to expeditiously coordinate removal."

The respondent first argues that the court lacks subject matter jurisdiction over Mr. Hua's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For reasons given before, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Hua ended in January 2026.[1] *See* 8 U.S.C. §§ 231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C.

---

[1] It is unclear why a second removal order was necessary or how it affected the validity or finality of the first removal order, but the court will assume for purposes of this opinion that the removal period began to run on the date the second removal order became final.

§ 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[2] The Warden relies on Section 1231(a)(6) e as the basis for Mr. Hua's current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained

---

[2] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments" — such as the status of repatriation

negotiations— are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the court engage the same constitutional dilemma that § 1231(a)(6) could present merely because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 11-14 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 10-11 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[3] After

---

[3] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

To start, the respondent identifies Vietnam as the only country under consideration for removal. The government was unable to remove him to Vietnam during his detention in 2015-2016, and his most recent term of detention now spans nine months. Mr. Hua cites the historical reluctance of Vietnam to accept individuals who entered the United States before 1995 for removal, and the court is well aware, after numerous habeas petitions in the context of immigration, that repatriation to Vietnam for pre-1995 immigrants often faces unique headwinds, notwithstanding a 2020 Memorandum of Understanding between the United States and Vietnam. The court finds that Mr. Hua met his preliminary burden of showing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.

To rebut this showing, the respondent represents that the government intends to expeditiously remove Mr. Hua to Vietnam once travel documents are received. This unsworn representation doesn't demonstrate that Mr. Hua's removal is likely to occur within the reasonably foreseeable future. It does not explain why efforts to remove Mr. Hua will be successful now when the government's prior efforts in 2015-2016 were unsuccessful and given Vietnam's history of refusing to repatriate individuals who entered the United States prior to 1995. It also does not explain why travel documents have not yet been obtained after nine months of detention or provide any reason for this delay—whether this is a mine-run turnaround or an inordinate delay. It does not even address whether a request for travel documents has been submitted to Vietnam. It does

6

not provide any insight as to when Vietnam might reach a decision once a formal request has been submitted or the likelihood that Vietnam will issue travel documents to Mr. Hua. It does not rest on the status of repatriation negotiations, or even suggest there are any that merit particular deference. Nor does the government make a showing similar to another case in which repatriation to Vietnam proved to be reasonably foreseeable. *See Huynh v. English*, 2026 WL 1074054, 4 (N.D. Ind. Apr. 17, 2026).

In short, the government has not shown a likelihood of Mr. Hua's removal in the reasonably foreseeable future. Therefore, the respondent must release Mr. Hua under *Zadvydas*. Efforts to remove him may continue while he is released on conditions of supervision.

For these reasons, the court:

(1) GRANTS the petition for writ of habeas corpus [5] and ORDERS the respondent to release Tuan Van Hua on appropriate conditions of supervised release and to certify compliance with this order by filing a notice with the court by **July 29, 2026**; and

(2) DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release.

SO ORDERED.

July 27, 2026                    *s/ Damon R. Leichty*
                                Judge, United States District Court